UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| IRONSHORE SPECIALTY INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff, Halliburton Energy Services, Inc. ("HESI"), by its attorneys, complains against defendant, Ironshore Specialty Insurance Company ("Ironshore"), and avers in support thereof as follows:

### Summary of the Action

1.      This is an action for breach of contract and declaratory relief to resolve HESI's claims relating to Ironshore's breach of its Site Pollution Legal Liability Select Policy No. 001362902 (the "Insurance Policy"), which names Statoil ASA as the named insured, and HESI as an additional insured, in accordance with an agreement between HESI and Statoil U.S.A. Onshore Properties Inc. ("Statoil"), which on information and belief is an affiliate of the named insured Statoil ASA.  Ironshore breached the Insurance Policy by (1) asserting a claim against HESI, as subrogor to Statoil, and demanding that HESI indemnify Ironshore for amounts that it paid to Statoil under the Insurance Policy, when the Insurance Policy waives subrogation against HESI; and (2) by failing to defend and indemnify HESI as an additional insured under the Insurance Policy against the improper indemnity claim that Ironshore has itself asserted.

<u>The Parties</u>

2.      HESI is a Delaware corporation with its principal place of business in Houston, Texas, located at 3000 Sam Houston Parkway East, Houston, Texas 77032.

3.      Ironshore is a foreign insurance company formed under the laws of the state of Arizona with its principal place of business in Massachusetts, located at 75 Federal Street, 5th Floor, Boston, Massachusetts 02110.  Ironshore may be served through the Commissioner of Insurance of the Texas Department of Insurance, 333 Guadalupe, Austin, Texas 78701 or through the Texas Secretary of State, 1019 Brazos, Austin, Texas 78701, who will forward service of process by certified or registered mail to Ironshore at 75 Federal Street, 5th Floor, Boston, Massachusetts 02110.

<u>Jurisdiction and Venue</u>

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that HESI and Ironshore are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      Venue is proper in this District in that HESI is located in this District, and Ironshore has asserted claims against HESI arising out of a proceeding pending in state court in Harris County, within this District, and arising from the settlement made between Ironshore and Statoil in that state court proceeding.

<u>HESI's Agreement With Statoil</u>

6.      As of November 26, 2012, HESI and Statoil entered into the Onshore Master Services Agreement No. 4600017936 For Goods And/Or Services Between Statoil Texas Onshore Properties, LLC and Halliburton Energy Services, LLC (the "MSA").  Copies of the relevant provisions in the MSA are attached as Exhibit "1."

7.      The MSA contains "knock-for-knock" indemnity provisions, which provide that HESI shall release, defend and indemnify Statoil from certain claims arising out of loss or damage to property of HESI and its contractors, and further provide that Statoil shall release, defend and indemnify HESI from certain claims arising out of loss or damage to Statoil and its contractors, regardless of fault, as follows:

> 12.1    <u>Contractor's Indemnification of Company</u>:   Contractor shall release Company Group of any liability for, and shall protect, defend and indemnify Company Group from and against all Claims of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any Party or Parties, arising in connection herewith, including during any ingress, egress, loading or unloading of personnel or cargo, arising out of any illness, bodily injury, death or loss or damage to property of any member of Contractor Group, Regardless of Fault.

> 12.2    <u>Company's Indemnification of Contractor</u>:  Company shall release Contractor Group of any liability for, and shall protect, defend and indemnify Contractor Group from and against all Claims of every kind and character, without limit and without regard to the cause of causes therefore or the negligence of any Party or Parties, arising in connection herewith, including during any ingress, egress, loading or unloading of personnel or cargo, arising out of any illness, bodily injury, death or loss or damage to property of any member of Company Group, Regardless of Fault.

8.      The MSA also contains provisions that provide for the assumption of liability, defense and indemnity for claims arising from pollution or contamination, which provide as follows:

> 12.10   <u>Pollution or Contamination</u>:  Notwithstanding anything to the contrary contained in the applicable Work Order Agreement, it is understood and agreed by and between Contractor and Company that the responsibility for pollution or contamination shall be as follows:

> > 12.10.1  Contractor shall assume all responsibility for, including control and removal of, and shall protect, defend and

indemnify Company Group from and against all Claims of every kind and character arising from pollution or contamination, which originates above the surface of the land or water from items in the possession or control of anyone within Contractor Group or directly associated with Contractor Group's equipment or facilities.

12.10.2   Company shall assume all responsibility for, and shall protect, defend and indemnify contractor from and against all costs to control, remove, or clean up all other pollution or contamination which may occur during the conduct of Work hereunder, including that which may result from fire, blowout, cratering, seepage or any other uncontrolled flow of oil, gas, water or other substance, as well as the use or disposition of all drilling, completion, and produced fluids, contaminated cuttings or cavings, lost circulation and fish recovery materials and fluids. Company shall release Contractor of any liability for the foregoing.

9.     The MSA also contains specifically-negotiated Agreed Exceptions to the MSA, including a provision that applies "notwithstanding anything contained elsewhere" in the MSA that Statoil "shall release, defend, hold harmless and indemnify" HESI against "any" claims resulting from "any" fire:

12.8     Blow-outs or Cratering:  Subject to Articles 12.1 and 12.4 but notwithstanding anything contained elsewhere in this Master Agreement to the contrary, Company shall release, defend, hold harmless and indemnify Contractor Group against any Claims resulting from any blowout, fire, explosion, cratering or any uncontrolled well condition (including the cost to control a wild well and the removal of debris), Regardless of Fault.

10.    The MSA contains definitions, including as follows:

a.     "Company Group" means, *inter alia*, Statoil and its contractors; and

b.     "Contractor Group" means, *inter alia*, HESI and its contractors; and

c.     "Claims" mean all claims, actions, cause of action, suits, proceedings, liabilities, fines, penalties and demands, of any kind or type whatsoever and all costs and expenses associated therewith, including without

- 4 -

limitation, judgments, penalties, interest, settlement fees, court costs and legal fees, and shall include claims of strict liability, absolute liability, passive liability and liability or fault imposed by Applicable Laws and contractual liability imposed by an agreement with a third party.

Ironshore Settles Statoil's Claim for Losses and Damages Resulting from the Fire

11.     On June 28, 2014, there was a fire at the Eisenbarth well pad located in Monroe County, Ohio (the "Fire") while HESI was performing services under the MSA.

12.     On information and belief, Statoil incurred costs and damages resulting from the Fire, and asserted a claim against its insurer, Ironshore, under the Insurance Policy.  A copy of the Insurance Policy, as produced by Ironshore, is attached as Exhibit "2."

13.     On information and belief, Ironshore paid Statoil $11,937,500 under the Insurance Policy for damage and loss claimed by Statoil and resulting from the Fire.

14.     On information and belief, Ironshore's payment to Statoil is subject to reallocation in a lawsuit pending among Statoil's insurers, including Ironshore, in which the amount paid by Ironshore to Statoil could be subject to adjustment up or down.

15.     By letter dated November 22, 2016, Ironshore asserted an indemnity claim against HESI under paragraphs 12.1 and 12.10 of the MSA, asserting that HESI had agreed to indemnify Statoil for losses and damages resulting from the Fire, and that as subrogor to Statoil's rights under the MSA, HESI is obligated to reimburse Ironshore for all amounts that Ironshore paid to Statoil as set forth above.  A copy of the November 22, 2016 letter is attached as Exhibit "3."

16.     HESI responded to Ironshore's claim by letter dated December 8, 2016.  That letter disputed Ironshore's right to indemnification from HESI, asserted that Statoil had released and agreed to defend, indemnify and hold harmless HESI for the losses and damages resulting from the Fire, as set forth in paragraph 12.8 of the MSA, and requested that Ironshore defend and

indemnify HESI from and against the claims that Ironshore itself was asserting, since HESI is named as an additional insured under the Insurance Policy.  A copy of the December 8, 2016 letter is attached as Exhibit "4."

Ironshore Waived Subrogation Against HESI, and<br>HESI is an Additional Insured Under the Insurance Policy

17.     The Insurance Policy contains an endorsement (Endorsement #3) that waives subrogation against HESI as follows:

> Notwithstanding anything to the contrary contained in this Paragraph, [Ironshore] hereby expressly waives any rights of subrogation against the following:  To the extent required by written contract, provided that such contract was entered into prior to the discovery of the **Pollution Incident** giving rise to **Loss**.

18.     Section 9.1 of the MSA requires Statoil to obtain a waiver of subrogation against HESI in the Insurance Policy, as follows:

> [Statoil] will cause its insurer to waive subrogation against [HESI] for liabilities [Statoil] assumes and shall maintain, at [Statoil's] expense, insurance coverage as set forth in enclosure 2 of the same kind and in the same amount as is required of [HESI] . . . .

19.     The requirement for Statoil to cause its insurer to waive subrogation against HESI, and the waiver of subrogation contained as an Endorsement to the Insurance Policy, includes a waiver of subrogation against HESI because Statoil assumes liabilities for all losses and damages resulting from the Fire, as set forth in paragraph 12.8 of the MSA, notwithstanding anything in the MSA to the contrary, and the MSA was entered into prior to the Fire, which resulted in the losses and damages that Ironshore paid under the Insurance Policy.

20.     The Insurance Policy contains an endorsement (Endorsement #5) that names HESI as an additional insured as follows:

- 6 -

The entity(s) scheduled below is (are) included as additional insured(s).  Coverage for such additional insured(s) applies under this Endorsement:

1. Solely to the additional insured's liability arising out of the **Named Insured's** ownership, operation, maintenance or use of the **Covered Property(ies)**; and

2. A.  Only if the additional insured is named in a suit alleging the additional insured is liable on the basis described in paragraph 1. above, or

   B. The additional insured owns a nonoperating working interest with the **Named Insured** and has assumed liability described in paragraph 1. above as operating expenses in an operating agreement with the **Named Insured**.

Schedule of Additional Insured(s)

To the extent required by written contract, provided that:

a. such contract or agreement is in effect prior to the **Loss** or the assertion of a **Claim** against the **Named Insured** or the additional insured,

b. such additional insured is covered under this Policy only for Limits of Liability up to and not exceeding the amount required by the written contract with the **Named Insured** and subject to the Limits of Liability of this Policy, and

c. any coverage provided to an additional insured shall be excess over any other valid and collectible insurance issued to the additional insured unless a written contract or agreement specifically requires that this insurance apply on a primary or non-contributory basis; however, the foregoing shall not apply to any insurance under which a **Named Insured** hereunder is a named insured.

   However, the insurance afforded to such additional insured described above:

   i) Only applies to the extent permitted by law; and

- 7 -

ii)     Will not be broader than that which the **Named Insured** is required by the contract or agreement to provide for such additional insured.

21.     Section 9.1 of the MSA requires HESI to obtain insurance for liabilities that it assumes under the MSA and to name Statoil as an additional insured in such policies.  Therefore, the corresponding provision in section 9.1 of the MSA quoted in paragraph 18 above requires that Statoil name HESI as an insured in insurance policies that apply to liabilities that Statoil assumes under the MSA, including the Ironshore Insurance Policy.  The requirement that Statoil maintain insurance in the same kind and amount as HESI, and the additional insured provision of the Insurance Policy, operates to name HESI as an additional insured under the Insurance Policy.

COUNT I – DECLARATORY JUDGMENT

22.     The averments set forth in paragraphs 1 through 21 hereof are incorporated by reference as if set forth herein.

23.     The Insurance Policy provides that Ironshore waives its rights of subrogation against HESI.

24.     Ironshore has asserted that it is subrogated to Statoil's rights under the MSA, and that HESI is obligated to indemnify Ironshore for the amounts that Ironshore paid to Statoil under the Insurance Policy for losses and damages resulting from the Fire.

25.     By reason of the foregoing, an actual controversy of a justiciable nature exists between HESI and Statoil as to whether Ironshore has waived subrogation against HESI for the amounts that Ironshore paid to Statoil under the Insurance Policy for losses and damages resulting from the Fire.

COUNT II – BREACH OF CONTRACT

26.     The averments set forth in paragraphs 1 through 25 hereof are incorporated by reference as if set forth herein.

27.     Ironshore breached the Insurance Policy by asserting that it is subrogated to Statoil's rights under the MSA, and as subrogor, demanding that HESI indemnify Ironshore for amounts that Ironshore paid to Statoil for losses and damages resulting from the Fire.

28.     HESI has suffered damages as a result of Ironshore's breach.

COUNT III – DECLARATORY JUDGMENT

29.     The averments set forth in paragraphs 1 through 28 hereof are incorporated by reference as if set forth herein.

30.     The Insurance Policy names HESI as an additional insured, and thus requires that Ironshore defend, indemnify and hold harmless HESI from claims covered under the Insurance Policy.  To allow Ironshore to be subrogated against its own insured would negate the additional insured provision of the Insurance Policy, and would be contrary to public policy.

31.     HESI placed Ironshore on notice of the claim that Ironshore itself asserted against HESI, as subrogor to Statoil's rights under the MSA, and requested that Ironshore defend and indemnify HESI from and against those claims.

32.     Ironshore failed to respond to HESI's claim for a defense and indemnity under the Insurance Policy, and Ironshore continues to assert its claims against HESI to which HESI is entitled to a defense and indemnity as an additional insured under the Insurance Policy.

33.     An actual controversy of a justiciable nature exists between HESI and Ironshore concerning Ironshore's obligation to defend and indemnify HESI from and against the claims that Ironshore itself has asserted against HESI.

<u>COUNT IV – BREACH OF CONTRACT</u>

34.     The averments set forth in paragraphs 1 through 33 hereof are incorporated by reference as if set forth herein.

35.     Ironshore breached the Insurance Policy by failing to defend and indemnify HESI from and against the claims that Ironshore itself has asserted against HESI.

36.     HESI has suffered damages as a result of Ironshore's breach.

**WHEREFORE**, HESI requests that the Court:

1) Declare that Ironshore waived its rights of subrogation against HESI for the amounts that it paid to Statoil under the Insurance Policy for losses and damages resulting from the Fire, and that Ironshore breached the Insurance Policy by asserting claims against HESI as subrogor to Statoil's purported indemnity rights;

2) Declare that Ironshore is obligated to defend and indemnify HESI as an additional insured under the Insurance Policy for the claims that Ironshore asserted against HESI, as subrogor to Statoil's claims, and that Ironshore breached its obligation to defend and indemnify HESI;

3) Enter judgment against Ironshore and in favor of HESI for damages incurred by HESI as a result of Ironshore's breach of the Insurance Policy;

4) Award HESI counsel fees and expenses for this action; and

5) Award HESI such other and further relief as the Court deems just and proper.

Respectfully submitted,

KING & SPALDING LLP


/s/ Elizabeth Robertson Taber
Elizabeth Robertson Taber
State Bar No. 24060502
Federal ID 1402483
1100 Louisiana, Suite 4000
Houston, Texas 77002-5219
Telephone: 713.751.3200
Fax: 713.751.3290
Email:  etaber@kslaw.com

**ATTORNEY FOR DEFENDANT
HALLIBURTON ENERGY SERVICES,
INC.**

Dated: March 8, 2017

OF COUNSEL:

Neil S. Witkes, Esquire
MANKO, GOLD, KATCHER & FOX, LLP
401 City Avenue, Suite 901
Bala Cynwyd, PA  19004
nwitkes@mankogold.com
Phone: (484) 430-2314
Fax: (484) 430-5711